Filing # 31829745 E-Filed 09/09/2015 10:31:07 AM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

Estates of R.F.J., R.F., and J.F., deceased minor
children; BRIAN CABREY, attorney ad litem and
next friend of H.F., a minor child; RICHARD
FOWLER, individually; and JENNIFER SMITH,
individually,

CASE NO.: 16-2015-CA-005438

        Plaintiffs,

DIVISION NO.: CV-D

v.

FLORIDA DEPARTMENT OF CHILDREN AND
FAMILIES, a governmental agency of the State of
Florida; REGINALD BRADY, individually; and
BRUCE PERRY, individually,

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiffs, the Estates of R.F.J., R.F., and J.F., deceased minor children; H.F., by and
through her attorney ad litem and next friend BRIAN CABREY; RICHARD FOWLER,
individually; and JENNIFER SMITH, individually (collectively, the "Plaintiffs"), sue the
Defendants, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, a governmental
agency of the State of Florida ("DCF"); REGINALD BRADY, individually, and BRUCE
PERRY, individually, and allege as follows:

### Parties, Jurisdiction, and Venue

1.     This is an action for damages that exceed the sum of $15,000, exclusive of
interest, attorney's fees, and costs.

2.     Plaintiff, MARK CALVIN, is the Personal Representative of the Estates of R.F.J.,
R.F., and J.F. (the "Estates") and is authorized to bring this action on the Estates' behalf. (R.F.J.,
RF and J.F. are collectively referred to as the "Decedents").

3.      R.F.J., born in 2009, was a minor child who at all times material was living in Duval County Florida.  R.F.J. was pronounced deceased on June 17, 2014 after being killed in a house fire on the same date.

4.      Plaintiff MARK CALVIN was duly appointed as the Personal Representative on September 3, 2015 for the Estate of R.F.J.   True and correct copies of the Letters of Administration regarding the appointment are attached hereto as **Exhibit "A"**.

5.      R.F., born in 2011, was a minor child who at all times material was living in Duval County, Florida.  RF was pronounced deceased on June 17, 2014 after being killed in a house fire on the same date.

6.      Plaintiff MARK CALVIN was duly appointed as the Personal Representative on September 3, 2015 for the Estate of R.F.   True and correct copies of the Letters of Administration regarding the appointment are attached hereto as **Exhibit "B"**.

7.      J.F., born in 2013, was a minor child who at all times material was living in Duval County, Florida.  J.F. was pronounced deceased on June 17, 2014 after being killed in a house fire on the same date.

8.      Plaintiff MARK CALVIN was duly appointed as the Personal Representative on September 3, 2015 for the Estate of J.F.  True and correct copies of the Letters of Administration regarding the appointment are attached hereto as **Exhibit "C"**.

9.      BRIAN CABREY is the court appointed attorney ad litem and next friend of H.F., a minor child, and is authorized to bring this action on her behalf (H.F. and the Decedents are collectively known as the "Children").

10.     At all times material to this action, Plaintiffs Richard Fowler and Jennifer Smith, (the "Fowlers"), were the natural parents of the Children, and were residents of Duval County, Florida.

11.     DCF, was and is a governmental agency of the State of Florida and at all times material was operating in Duval County, Florida.

12.     DCF and its employees are charged with the duty and responsibility of, among other things, the following:

     a.    Protecting the health, safety, and well-being of the children of Florida, including the Children;

     b.    Investigating allegations of child abuse, neglect, and threatened harm;

     c.    Ensuring that appropriate interventions and services are implemented to protect children, including the Children, in need of placement;

     d.    Intervention, or supervision on a permanent or temporary basis, in the State of Florida.

13.     At all times material to this action, DCF operated and staffed its District Four headquarters at 5920 Arlington Expressway in Jacksonville, Duval County, Florida.

14.     All incidents complained of in this Complaint took place and impacted or affected the Plaintiffs and the Children in Duval County, Florida.

15.     Defendant, Reginald Brady ("Brady"), was at all times material hereto, employed by DCF as a Child Protective Investigator in Jacksonville, Florida and was obligated to comply with all state and federal laws and regulations as well as departmental and/or district procedures regarding children in need of DCF's services.  At all times material hereto Brady was assigned to the Children's case.

16.     As a Child Protective Investigator ("CPI"), Brady is charged with the authority, responsibility, and duty of, among other things the following:

- 3 -

a.  To conduct investigations regarding allegations of abuse, neglect, abandonment and/or special conditions for children;

b.  To collect information through observation and interviews with children, parents, relatives, neighbors, and/or other parties associated with the case;

c.  To analyze criminal, past service history, and other records relevant to the children in need;

d.  To work closely with law enforcement;

e.  To notify state attorney, law enforcement, child protection team and any other required individuals as appropriate;

f.  To identify needs including, without limitation, whether intervention is needed for the children's safety and well-being;

g.  To assess danger, threats, child vulnerabilities, and caregiver protective capacities in order to determine whether a child is safe or not;

h.  To develop with family any required present and/or impending danger plans based on analysis of danger threats in operation;

i.  To schedule and gather information for case staffings;

j.  To participate in case staffings;

k.  To gather and consider all available, relevant information, when assessing any risk to children including the prior criminal history and mental fitness of an adult being considered to provide care for children;

l.  To manage and modify safety plans as necessary during the course of the investigation;

m.  To implement appropriate safety plans to identify immediate and long-term actions to keep children safe from harm;

n.  To establish and maintain cooperative and professional working relationships with organizations and other agencies involved with child protective investigations including, without limitations, community based providers, law enforcement, schools, medical personnel, and other agency resources.

17.  At all times material hereto, Brady had the ability, authority, duty, and the means to remove a child from a caregiver or residence where there was a risk of serious harm to the child. Brady is being sued in his individual capacity.

- 4 -

18.    Defendant, Bruce Perry ("Perry"), was at all times material hereto, employed by DCF as a child protective investigator supervisor in Jacksonville, Florida and was obligated to comply with all state and federal laws and regulations as well as departmental and/or district procedures regarding children in need of DCF's services.  At all times material hereto Perry was assigned to the Children's case.

19.    As a Child Protective Investigator  Supervisor ("CPIS"), Perry is charged with the authority, responsibility, and duty of, among other things:

      a.    To direct and supervise the work of child protective investigators and support staff, including CPI Brady;

      b.    To confirm child protective investigators and other personnel comply with DCF policies and procedures including those listed in paragraph 16 herein;

      c.    To communicate with, train, evaluate, and motivate child protective investigators to comply with their duties and responsibilities;

      d.    To plan and direct the work of child protective investigators including the ability to disapprove any placement and to recommend the removal of any child from such placement;

      e.    To routinely assess, screen, and evaluate child protective investigators and other employees to ensure compliance with their authority, responsibilities, and duties.

20.    At all times material hereto, Perry had the ability, authority, duty, and the means to disapprove any caregiver, home placement, or relocation in which there was a substantial risk of serious harm and to recommend the removal of any child from an unsafe placement.  Perry is being sued in his individual capacity.

21.    All conditions precedent and statutory requirements have been performed prior to the bringing of this action.

- 5 -

**General Allegations**

22.     On or before May 14, 2014, DCF initiated a case plan to investigate and confirm the ongoing health, safety, and well-being of the Children.  At that time Richard Fowler was the Children's primary caregiver.

23.     After initiating a case plan, DCF indicated it had concerns regarding Richard Fowler's ability to care for the Children due to his lack of parenting skills.  DCF indicated that Richard Fowler was a low functioning person and was not equipped to care for the Children.

24.     DCF further indicated Richard Fowler consented to parenting services, and appeared to be a loving and kind father to the Children.

25.     On or about June 14, 2014, Richard Fowler was temporarily unable to continue to assume the role as the Children's primary caregiver.

26.     Upon Richard Fowler being unable to assume the role as the Children's primary caregiver, the Children began residing at the home of their maternal grandfather, Clayton Woods ("Woods"), who lived at 525 New Berlin Road, Jacksonville, Duval County, Florida ("New Berlin Road Residence").

27.     On or about June 16, 2014, Defendants had knowledge that the Children were residing with Woods at the New Berlin Road Residence.

28.     On or about June 16, 2014, CPI Brady exercising his care, control, or authority as an employee of DCF, conducted a home visit at the New Berlin Road Residence to further evaluate the health, safety, and well-being of the Children.  CPI Brady intended to confirm, without limitation, that the Children would be safe at the New Berlin Road Residence, and determine whether Woods would provide safe supervision while the Children remained in his care.

29.    CPI Brady determined Woods was an acceptable caregiver and that the New Berlin Residence was an appropriate place for the Children to reside.

30.    Despite this determination, on June 17, 2014 around 8:13 AM, CPI Brady approved, allowed, or instructed Shelia Swearingen ("Swearingen"), the Children's grandmother, to take the Children from Woods' care at the New Berlin Road Residence, and relocate with the Children to 12719 Palmetto Street, Jacksonville, Duval County, Florida ("Palmetto Street Residence").

31.    Prior to approving, allowing or instructing Swearingen to relocate the Children to the Palmetto Street Residence, CPI Brady did not confirm the Palmetto Street Residence was safe and did not conduct a sufficient background investigation on Swearingen.

32.    At the time of the Children's relocation to the Palmetto Street Residence, no one had resided at the Palmetto Street Residence for several days and CPI Brady was not aware of its current condition.

33.    Without consulting the Fowlers or Woods, without performing a sufficient background investigation on Swearingen, and without conducting a recent home inspection or home study of the Palmetto Street Residence, CPI Brady approved, allowed, or instructed the relocation of the Children to the Palmetto Street Residence under Swearingen's supervision (the "Relocation").

34.    CPI Brady approved, allowed, or instructed the Relocation to the Palmetto Street Residence knowing that the Children would be relocated before CPI Brady conducted a recent inspection or home study of the Palmetto Street Residence.

JAX\1986348_2

35.     Later that day, after approving the Relocation, on or about June 17, 2014 at 1:45 PM, a staff meeting (the "Meeting") was held with CPI Brady, CPIS Perry, and other unknown DCF employees in attendance.

36.     At the Meeting, the Children's current residential placement and supervision were discussed.

37.     At or prior to the Meeting, CPI Brady was aware Swearingen was a convicted sex offender.

38.     At the Meeting, CPI Brady admitted knowing about Swearingen's criminal background, including the fact that Swearingen was a convicted sex offender for having sex with a minor.

39.     CPI Brady indicated at the Meeting that the Children were in Swearingen's care and that he wanted to remove the Children, but decided removal was not necessary.

40.     With knowledge that Swearingen was a convicted sex offender, CPIS Perry agreed and approved that removal was not necessary.

41.     At the Meeting, CPI Brady and CPIS Perry again approved, instructed, allowed, or authorized the Relocation, with actual knowledge that Swearingen was a registered sex offender in the State of Florida who had been convicted of lewd and lascivious acts on a minor child.

42.     Had CPI Brady or CPIS Perry conducted a sufficient background investigation on Swearingen, they would have learned, among other things, that Swearingen also suffered from significant mental health issues and was incapable of caring for the Children.  Mental health information was publicly available and could easily be accessed from Swearingen's criminal file, of which CPI Brady and CPIS Perry had actual knowledge.

- 8 -

43.     CPI Brady and CPIS Perry were aware of Swearingen's mental health issues at or before the Meeting, or, even after knowing she was a convicted sex offender, failed to perform a sufficient background investigation on Swearingen, which would have informed them of Swearingen's mental health issues.

44.     Nevertheless, CPI Brady and CPIS Perry determined at the Meeting that Swearingen was an adequate caregiver for the Children.

45.     Had CPI Brady and CPIS Perry conducted a sufficient background investigation on Swearingen, both would have learned, among other things, that Swearingen had been diagnosed with a mental health illness and had recently been adjudicated not guilty by reason of insanity in the Fourth Judicial Circuit after violating her sex offender probation.

46.     Criminal case No. 2005-CF-005132-16 (the "Swearingen Case") includes two letters that reference Swearingen's history of treatment for schizophrenia, undifferentiated type, which records were available to CPI Brady and CPIS Perry on or before June 17, 2014.  True and correct copies of the letters are attached hereto as **Composite Exhibit "D"**.

47.     Both letters outline Swearingen's diagnoses of ███████████, undifferentiated type and her use of anti-psychotic prescription medication to control ████████████ including, without limitation, hallucinations and emotional disturbances.

48.     A person is considered criminally insane in the State of Florida when she has a mental infirmity, disease or defect and because of the condition she did not know what she was doing or its consequences or although she knew what she was doing and the consequences, she did not know it was wrong, which must be proven by clear and convincing evidence and must overcome the presumption that she is sane.  This burden was met in the Swearingen Case.

49.     A sufficient background investigation or search of the public records, would have revealed Swearingen's inability to care for a child, including the Children, and the risks associated with placing the Children in her care.

50.     On June 17, 2014, Swearingen suffered from mental health issues, was not an adequate caregiver and should not have been caring for the Children.

51.     On June 17, 2014 at approximately 5:40 P.M., almost four hours or two-hundred forty minutes after the Meeting, while in Swearingen's sole care at the Palmetto Street Residence, R.F.J., who was four years old and who was not properly being supervised, was playing with a lighter and started a house fire (the "Fire").

52.     R.F.J. (four years old), R.F. (two years old), J.F. (ten months old) and Swearingen all perished in the Fire.

53.     H.F., who was six years old at the time, was in the Palmetto Street Residence during the Fire.

54.     H.F. inhaled smoke, was subject to the heat of the flames, and witnessed and heard her family burning before escaping the Fire with her life.  H.F. received immediate, medical care and survived.

55.     CPI Brady and CPIS Perry's placement, allowance, or approval of the Children to remain in Swearingen's care created a risk to the health, safety, and well-being of the Children, which ultimately led to the Fire and the death of R.F.J., RF, and J.F., and damages to H.F.

56.     CPI Brady and CPIS Perry's placement, allowance or approval of the Children to be placed at the Palmetto Street Residence without conducting a recent safety inspection or home study created a risk to the health, safety, and well-being of the Children, which ultimately led to the Fire and the death of R.F.J., RF, and J.F., and damages to H.F.

- 10 -

57.     On June 17, 2014, the Palmetto Street Residence was not a safe place for the Children to reside.

58.     CPI Brady recklessly disregarded the risk of harm to the Children by ordering, approving, or allowing the Relocation.

59.     CPIS Perry recklessly disregarded the risk of harm to the Children by ordering, approving, or allowing the Relocation.

60.     The injuries and damages to the Plaintiffs were the direct and proximate result of CPI Brady and CPIS Perry ordering, allowing or approving the Relocation.

## COUNT I

### (42 U.S.C. § 1983 claim by the Estate of R.F.J. against Defendant Reginald Brady)

61.     The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

62.     This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

63.     At all times material hereto, CPI Brady, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

64.     At all times material hereto, R.F.J. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to his physical health, safety, and well-being when CPI Brady approved, allowed, or ordered the Relocation.

65.     CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

- 11 -

66.     CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

67.     At all times material hereto, CPI Brady knew that Swearingen had a criminal history.

68.     At all times material hereto, CPI Brady knew that Swearingen was a convicted sex offender in the state of Florida;

69.     At all times material hereto, CPI Brady knew that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

70.     At all times material hereto, CPI Brady knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

71.     At all times material hereto, CPI Brady was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

72.     As a child protective investigator assigned to the case, Brady instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

    a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

    b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

    c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

    d.    Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

    e.    Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

- 12 -

      f.     Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

73.    CPI Brady's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

74.    At all relevant times, R.F.J. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

75.    CPI Brady was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

76.    Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPI Brady was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

77.    As a direct result of CPI Brady's deliberate indifference, R.F.J. suffered irreparable harm as he lost his life in the Fire.

78.    The Estate of R.F.J. is obligated to the undersigned firm for the payment of it's attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff, MARK CALVIN as Personal Representative of the Estate of R.F.J., for and on behalf of the Estate of R.F.J. and the survivors thereof, demands judgment against Defendant, REGINALD BRADY, for all recoverable damages including monetary loss, physical pain, harm and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

- 13 -

## COUNT II

**(42 U.S.C. § 1983 claim by the Estate of R.F. against Defendant Reginald Brady)**

79.     The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

80.     This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

81.     At all times material hereto, CPI Brady, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

82.     At all times material hereto, R.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPI Brady approved, allowed, or ordered the Relocation.

83.     CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

84.     CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

85.     At all times material hereto, CPI Brady knew that Swearingen had a criminal history.

86.     At all times material hereto, CPI Brady knew that Swearingen was a convicted sex offender in the state of Florida;

87.     At all times material hereto, CPI Brady knew that a sufficient background check had not been conducted on Swearingen before or subsequent to the Relocation.

- 14 -

88.     At all times material hereto, CPI Brady knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

89.     At all times material hereto, CPI Brady was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

90.     As a child protective investigator assigned to the case, Brady instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

a.      Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

b.      Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

c.      Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

d.      Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

e.      Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

f.      Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

91.     CPI Brady's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

92.     At all relevant times, it was clearly established that R.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

93.     CPI Brady was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

- 15 -

94.     Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPI Brady was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

95.     ·  As a direct and proximate result of CPI Brady's deliberate indifference, R.F. suffered irreparable harm as she lost their life in Fire.

96.     The Estate of R.F. is obligated to the undersigned firm for the payment of it's attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, MARK CALVIN as Personal Representative of the Estate of R.F., for and on behalf of the Estate of R.F. and the survivors thereof, demands judgment against Defendant, REGINALD BRADY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT III

**(42 U.S.C. § 1983 claim by the Estate of J.F. against Defendant Reginald Brady)**

97.     The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

98.     This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

99.     At all times material hereto, CPI Brady, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

- 16 -

100.   At all times material hereto, J.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPI Brady approved, allowed, or ordered the Relocation.

101.   CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

102.   CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

103.   At all times material hereto, CPI Brady knew that Swearingen had a criminal history.

104.   At all times material hereto, CPI Brady knew that Swearingen was a convicted sex offender in the state of Florida;

105.   At all times material hereto, CPI Brady knew that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

106.   At all times material hereto, CPI Brady knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

107.   At all times material hereto, CPI Brady was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

108.   As a child protective investigator assigned to the case, Brady instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

a.  Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

b.  Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

c.  Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

d.  Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

e.  Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

f.  Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

109.   CPI Brady's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

110.   At all relevant times, it was clearly established that J.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

111.   CPI Brady was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

112.   Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPI Brady was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

113.   As a direct result of CPI Brady's deliberate indifference, J.F. suffered irreparable harm as she lost their life in the Fire.

114.    The Estate of J.F. is obligated to the undersigned firm for the payment of it's attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, MARK CALVIN as Personal Representative of the Estate of J.F., for and on behalf of the Estate of J.F. and the survivors thereof, demands judgment against Defendant, REGINALD BRADY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT IV

### (42 U.S.C. § 1983 claim by H.F. against Defendant Reginald Brady)

115.    The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

116.    This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

117.    At all times material hereto, CPI Brady, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

118.    At all times material hereto, H.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPI Brady approved, allowed, or ordered the Relocation.

119.   CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

120.   CPI Brady had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

121.   At all times material hereto, CPI Brady knew that Swearingen had a criminal history.

122.   At all times material hereto, CPI Brady knew that Swearingen was a convicted sex offender in the state of Florida.

123.   At all times material hereto, CPI Brady knew that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

124.   At all times material hereto, CPI Brady knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

125.   At all times material hereto, CPI Brady was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

126.   As a child protective investigator assigned to the case, Brady instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

    a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

    b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

    c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

- 20 -

    d.       Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

    e.       Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

    f.       Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

127.    CPI Brady's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

128.    At all relevant times, it was clearly established that H.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

129.    CPI Brady was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

130.    Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPI Brady was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

131.    As a direct and proximate result of CPI Brady's deliberate indifference, H.F. has suffered irreparable harm and physical and emotional damages including, without limitation, psychological trauma, pain and suffering, deterioration of the loss of the ability to enjoy life, discomfort, and suffered other reasonably foreseeable damages. H.F. will require services and treatment for the rest of her life stemming from the psychological trauma she endured.

132.    Plaintiff H.F. is obligated to the undersigned firm for the payment of her attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff, BRIAN CABREY, attorney ad litem and next friend of H.F., a minor child, on and behalf of H.F. demands judgment against Defendant, REGINALD BRADY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT V

### (42 U.S.C. § 1983 claim by Richard and JENNIFER SMITH against Defendant Reginald Brady)

133.    The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

134.    This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

135.    At all times material hereto, CPI Brady, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

136.    At all times material hereto, the Children had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to their physical health, safety, and well-being when CPI Brady approved, allowed, or ordered the Relocation.

137.    CPI Brady had a statutory or constitutional duty to the Fowlers to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

138.    CPI Brady had a statutory or constitutional duty to the Fowlers to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

- 22 -

139.   At all times material hereto, CPI Brady knew that Swearingen had a criminal history.

140.   At all times material hereto, CPI Brady knew that Swearingen was a convicted sex offender in the state of Florida.

141.   At all times material hereto, CPI Brady knew that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

142.   At all times material hereto, CPI Brady knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

143.   At all times material hereto, CPI Brady was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

144.   As a child protective investigator assigned to the case, Brady instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

     a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

     b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

     c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

     d.    Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

     e.    Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

     f.    Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

- 23 -

145.   CPI Brady's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

146.   At all relevant times, it was clearly established that the Children had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

147.   CPI Brady was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

148.   Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPI Brady was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

149.   As a direct result of CPI Brady's deliberate indifference, Richard Fowler and JENNIFER SMITH have suffered irreparable harm and emotional damages including, without limitation, psychological trauma, pain and suffering, deterioration of the loss of the ability to enjoy life, discomfort, and suffered other reasonably foreseeable damages.

150.   The Fowlers are obligated to the undersigned firm for the payment of their attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, the Fowlers demand judgment against Defendant, REGINALD BRADY, for all recoverable damages including monetary loss, mental and emotional distress, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI

**(42 U.S.C. § 1983 claim by the Estate of R.F.J. against Defendant Bruce Perry)**

151.   The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

152.   This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

153.   At all times material hereto, CPIS Perry, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

154.   At all times material hereto, R.F.J. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to his physical health, safety, and well-being when CPIS Perry approved, allowed, or ordered the Relocation.

155.   CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

156.   CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

157.   At all times material hereto, CPIS Perry knew that Swearingen had a criminal history.

158.   At all times material hereto, CPIS Perry knew that Swearingen was a convicted sex offender in the state of Florida;

159.   At all times material hereto, CPIS Perry that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

160. At all times material hereto, CPIS Perry knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

161. At all times material hereto, CPIS Perry was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

162. As a child protective investigator supervisor assigned to the case, CPIS Perry instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

    a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

    b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

    c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

    d.    Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

    e.    Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

    f.    Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

163. CPIS Perry's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

164. At all relevant times, it was clearly established that R.F.J. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

165. CPIS Perry was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

- 26 -

166. Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPIS Perry was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

167. As a direct result of CPIS Perry's deliberate indifference, R.F.J. suffered irreparable harm as he lost their life in the Fire.

168. The Estate of R.F.J. is obligated to the undersigned firm for the payment of it's attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, MARK CALVIN as Personal Representative of the Estate of R.F.J., for and on behalf of the Estate of R.F.J. and the survivors thereof, demands judgment against Defendant, BRUCE PERRY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VII

**(42 U.S.C. § 1983 claim by the Estate of R.F. against Defendant Bruce Perry)**

169. The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

170. This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

171. At all times material hereto, CPIS Perry, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

172.     At all times material hereto, R.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPIS Perry approved, allowed, or ordered the Relocation.

173.     CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

174.     CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

175.     At all times material hereto, CPIS Perry knew that Swearingen had a criminal history.

176.     At all times material hereto, CPIS Perry knew that Swearingen was a convicted sex offender in the state of Florida;

177.     At all times material hereto, CPIS Perry that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

178.     At all times material hereto, CPIS Perry knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

179.     At all times material hereto, CPIS Perry was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

180.     As a child protective investigator supervisor assigned to the case, CPIS Perry instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

-28-

a. Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

b. Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

c. Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

d. Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

e. Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

f. Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

181. CPIS Perry's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

182. At all relevant times, it was clearly established that R.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

183. CPIS Perry was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

184. Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPIS Perry was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

185. As a direct result of CPIS Perry's deliberate indifference, R.F suffered irreparable harm as she lost their life in the Fire.

- 29 -

186.   The Estate of R.F. is obligated to the undersigned firm for the payment of it's attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, MARK CALVIN as Personal Representative of the Estate of R.F., for and on behalf of the Estate of R.F. and the survivors thereof, demands judgment against Defendant, BRUCE PERRY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII

### (42 U.S.C. § 1983 claim by the Estate of J.F. against Defendant Bruce Perry)

187.   The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

188.   This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

189.   At all times material hereto, CPIS Perry, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

190.   At all times material hereto, J.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPIS Perry approved, allowed, or ordered the Relocation.

191.    CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

192.    CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

193.    At all times material hereto, CPIS Perry knew that Swearingen had a criminal history.

194.    At all times material hereto, CPIS Perry knew that Swearingen was a convicted sex offender in the state of Florida;

195.    At all times material hereto, CPIS Perry that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

196.    At all times material hereto, CPIS Perry knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

197.    At all times material hereto, CPIS Perry was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

198.    As a child protective investigator supervisor assigned to the case, CPIS Perry instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

     a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

     b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

     c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

- 31 -

    d.    Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

    e.    Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

    f.    Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

199.    CPIS Perry's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

200.    At all relevant times, it was clearly established that J.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

201.    CPIS Perry was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

202.    Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPIS Perry was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

203.    As a direct result of CPIS Perry's deliberate indifference, J.F. suffered irreparable harm as she lost their life in the Fire.

204.    The Estate of J.F.  obligated to the undersigned firm for the payment of it's attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff, MARK CALVIN as Personal Representative of the Estate of J.F., for and on behalf of the Estate of J.F. and the survivors thereof, demands judgment against Defendant, BRUCE PERRY, for all recoverable damages including monetary loss, physical pain

- 32 -

and suffering, mental and emotional distress, medical expenses, funeral expenses, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT IX

### (42 U.S.C. § 1983 claim by H.F. against Defendant Bruce Perry)

205.  The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

206.  This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

207.  At all times material hereto, CPIS Perry, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

208.  At all times material hereto, H.F. had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain and harm and a fundamental right to her physical health, safety, and well-being when CPIS Perry approved, allowed, or ordered the Relocation.

209.  CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

210.  CPIS Perry had a statutory or constitutional duty to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

211.  At all times material hereto, CPIS Perry knew that Swearingen had a criminal history.

- 33 -

212.   At all times material hereto, CPIS Perry knew that Swearingen was a convicted sex offender in the state of Florida.

213.   At all times material hereto, CPIS Perry that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

214.   At all times material hereto, CPIS Perry knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

215.   At all times material hereto, CPIS Perry was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

216.   As a child protective investigator supervisor assigned to the case, Perry instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

    a.    Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

    b.    Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

    c.    Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

    d.    Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

    e.    Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

    f.    Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

217.   CPIS Perry's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

218.    At all relevant times, it was clearly established that H.F. had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

219.    CPIS Perry was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

220.    Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPIS Perry was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

221.    As a direct and proximate result of CPI Brady's deliberate indifference, H.F. has suffered irreparable harm and physical and emotional damages including, without limitation, psychological trauma, pain, harm and suffering, deterioration of the loss of the ability to enjoy life, discomfort, and suffered other reasonably foreseeable damages.  H.F. will require services and treatment for the rest of her life stemming from the psychological trauma she endured.

222.    Plaintiff H.F. is obligated to the undersigned firm for the payment of her attorney's fees and seeks recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff, BRIAN CABREY, attorney ad litem and next friend of H.F., a minor child, on and behalf of H.F. demands judgment against Defendant, BRUCE PERRY, for all recoverable damages including monetary loss, physical pain and suffering, mental and emotional distress, medical expenses, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

JAX\1986348_2

## COUNT X

### (42 U.S.C. § 1983 claim by Richard and JENNIFER SMITH against Defendant Bruce Perry)

223.  The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

224.  This action arises under and is brought pursuant to 42 U.S.C. § 1983 and § 1988(a) to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution.

225.  At all times material hereto, CPIS Perry, was a "person" under 42 U.S.C. § 1983, and was acting under color of state law within the meaning of 42 U.S.C. § 1983.

226.  At all times material hereto, the Children had a cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain, harm and a fundamental right to their physical health, safety, and well-being when CPIS Perry approved, allowed, or ordered the Relocation.

227.  CPIS Perry had a statutory or constitutional duty to the Fowlers to prevent harm to the Children by ensuring the Children were placed with a qualified, responsible adult who would not subject the Children to a risk of serious harm.

228.  CPIS Perry had a statutory or constitutional duty to the Fowlers to prevent harm to the Children by ensuring the Children were placed in a safe environment free from any risk of serious harm.

229.  At all times material hereto, CPIS Perry knew that Swearingen had a criminal history.

230.  At all times material hereto, CPIS Perry knew that Swearingen was a convicted sex offender in the state of Florida.

231.   At all times material hereto, CPIS Perry that a sufficient background investigation had not been conducted on Swearingen before or subsequent to the Relocation.

232.   At all times material hereto, CPIS Perry knew or deliberately failed to learn of the serious risk to the Children resulting from Swearingen's mental health and inability to care for the Children.

233.   At all times material hereto, CPIS Perry was on notice that Swearingen could not provide safe care, supervision, or respite care for the Children.

234.   As a child protective investigator supervisor assigned to the case, Perry instructed, approved, or authorized an unsafe relocation of the Children to Swearingen's care by:

     a.     Deliberately failing to conduct a sufficient background investigation on Swearingen prior to allowing, approving, or instructing Swearingen's supervision, care, or respite care of the Children;

     b.     Being objectively aware of the risk of serious harm to the Children while in Swearingen's care, supervision, or respite care and failing to protect the Children from said risk;

     c.     Deliberately failing to carry out protective measures with regards to the Children's care, supervision, or respite care;

     d.     Knowingly allowing the Relocation even with knowledge of Swearingen's criminal history and status as a registered sex offender;

     e.     Deliberately failing to learn of the risk of serious harm to the Children's health, safety, and well-being by failing to learn of Swearingen's mental health history;

     f.     Deliberately failing to conduct a reasonable inspection or home study of the Palmetto Street Residence to ensure it did not pose a risk of serious harm to the Children.

235.   CPIS Perry's actions or failures to act were done with knowledge that said actions would deprive the Children of their constitutional rights.

236.   At all relevant times, it was clearly established that the Children had a fundamental right to physical safety that was free from unreasonable risk of serious harm.

237.   CPIS Perry was objectively aware of the risk of serious harm, recklessly disregarded the risk of harm, and his conduct was more than merely negligent.

238.   Despite having the authority and means to remedy the unconstitutional conditions stemming from the Relocation, CPIS Perry was deliberately indifferent to said conditions and recklessly disregarded the risk of harm by failing to take immediate action to ensure the Children's safety.

239.   As a direct result of CPIS Perry's deliberate indifference, Richard Fowler and JENNIFER SMITH have suffered irreparable harm and emotional damages including, without limitation, psychological trauma, pain, harm and suffering, deterioration of the loss of the ability to enjoy life, discomfort, and suffered other reasonably foreseeable damages.

240.   The Fowlers are obligated to the undersigned firm for the payment of their attorney's fees and seek recovery of reasonable attorney's fees pursuant to the provisions of 42 U.S.C. § 1988.

**WHEREFORE**, the Fowlers demand judgment against Defendant, BRUCE PERRY, for all recoverable damages including monetary loss, mental and emotional distress, future loss of support and services, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

### COUNT XI

**(Florida Wrongful Death Act claim by the Estates of R.F.J., R.F., and J.F.; Richard Fowler; and JENNIFER SMITH against DCF in the alternative to Counts I, II, III, V, VI, VII, VIII, X)**

241.   Plaintiffs re-allege the allegations contained in paragraphs 1 through 60 of this Complaint and incorporate the same herein.

242.    This is an action for wrongful death damages in excess of $15,000, exclusive of attorney's fees, interests, and costs.

243.    This claim is brought pursuant to Section 768.16, *et seq.*, Florida Statutes (2014) (the "Florida Wrongful Death Act)", and is brought in the alternative to Counts I, II, III, V, VI, VII, VIII, and X.

244.    All conditions precedent and statutory requirements have been performed prior to the bringing of this action.  On February 3, 2015, counsel, on behalf of Plaintiffs, served notice of their claims pursuant to section 768.28, Florida Statutes.  The Department of Financial Services has failed to make a final disposition of the claims, and thus the claims are denied for the purposes of the notice requirements imposed by section 768.28, Florida Statutes.  A copy of this pre-suit notice is attached hereto as **Exhibit "E"** and is incorporated herein by this reference.

245.    Plaintiff MARK CALVIN, as Personal Representative of the Estates, brings this action pursuant to Florida's Wrongful Death Act and on behalf of the Estates, and on behalf of all survivors under the Florida Wrongful Death Act.

246.    The survivors of the Estates, pursuant to the Florida Wrongful Death Act are JENNIFER SMITH and Richard Fowler.

247.    At all times material hereto, CPI Brady and CPIS Perry were employees of DCF.

248.    DCF is vicariously liable for the acts of negligence and breach of duty committed by its employees CPI Brady and CPIS Perry within the course and scope of their employment with DCF.

249.    On or about June 17, 2014, DCF owed a duty to the Decedents and the Fowlers to ensure that its employees CPI Brady and CPIS Perry exercised reasonable care in the control, care, or supervision of the Decedents.

250.    On or about June 17, 2014, DCF owed a duty to the Decedents and the Fowlers to ensure its employees CPI Brady and CPIS Perry exercise reasonable care in selecting, approving, allowing, or instructing the location and the individual providing care for the Children in a manner that would not endanger the Decedents' lives or safety.

251.    On or about June 17, 2014, CPI Brady and CPIS Perry approved, allowed, or instructed the Relocation.

252.    The decision to approve, allow, or instruct the Relocation was in the course and scope of CPI Brady and CPIS Perry's employment as being responsible for ensuring the Decedents were in a physically safe environment and free from unnecessary pain and harm.

253.    On or about June 17, 2014, DCF breached its duty by allowing its employees, CPI Brady and CPIS Perry, to negligently approve, allow, or instruct the Relocation by:

      a.    failing to conduct a sufficient background investigation of Swearingen prior to the Relocation;

      b.    failing to place Decedents in an environment that was physically safe;

      c.    failing to place Decedents in an environment that was free from unnecessary pain and harm;

254.    As a direct and proximate result of DCF's negligence, the Decedents suffered bodily injuries and ultimately died in the Fire.

255.    As a direct and proximate result of the Decedents' deaths, the Estates and the Fowlers have incurred damages allowed by the Florida Wrongful Death Act, including without limitation the following: (a) the Decedents' survivors, Richard Fowler and JENNIFER SMITH, have lost the Decedents' companionship, and have incurred mental pain, harm and suffering from the date of the Decedents' deaths; (b) the named survivors have incurred medical and

- 40 -

funeral expenses due to the Decedents' injuries and subsequent deaths; and (c) the Estates have suffered the loss of the Decedents' prospective net accumulations and earnings.

WHEREFORE, MARK CALVIN, as Personal Representative of the Estates of R.F.J., R.F., and J.F., and the FOWLERS demand judgment against Defendant, DEPARTMENT OF CHILDREN AND FAMILIES, resulting from R.F.J., R.F., and J.F.'s wrongful deaths, including all damages allowed under the Florida Wrongful Death Act, together with interest and the costs of this action.

## COUNT XII

### (Negligent Infliction of Emotional Distress claim by H.F. against DCF in the alternative to Counts IV and IX)

256.   BRIAN CABREY, attorney ad litem and next friend to H.F., a minor child, re-alleges each of the allegations contained in paragraphs 1, 9, 11-20, 22-60 herein.

257.   All conditions precedent and statutory requirements have been performed prior to the bringing of this action.  On February 3, 2015, counsel, on behalf of Plaintiffs, served notice of their claims pursuant to section 768.28, Florida Statutes.  The Department of Financial Services has failed to make a final disposition of the claims, and thus the claims are denied for the purposes of the notice requirements imposed by section 768.28, Florida Statutes.  A copy of this pre-suit notice is attached hereto as Exhibit "E" and is incorporated herein by this reference.

258.   H.F. has suffered emotional distress in that she feared for her own safety during the Fire and, thereafter, suffered severe mental distress by witnessing the deaths of her siblings, the Decedents.

259.   H.F. personally witnessed the Fire.

260.   H.F. remained inside the Palmetto Street Residence, along with the Decedents, until a bystander rescued her.

- 41 -

261.    Thereafter, H.F. personally witnessed the Palmetto Street Residence continue to burn with her siblings inside.

262.    H.F. witnessed and heard her family screaming and burning during the Fire.

263.    H.F. suffered a physical injury caused by the psychological trauma she experienced as a result of these events.

264.    H.F. had a close emotional attachment to her younger siblings, all who perished in the Fire.

265.    H.F.'s physical injury was caused by the psychological trauma imposed by CPI Brady and CPIS Perry's behavior, conduct, or actions that resulted in the Relocation and subsequent Fire.

266.    On or about June 17, 2014, CPI Brady and CPIS Perry negligently approved, allowed, or instructed the Relocation.

267.    The decision to approve, allow, or instruct the Relocation was in the course and scope of CPI Brady and CPIS Perry's employment with DCF.

268.    Pursuant to section 768.28, Florida Statutes, DCF is vicariously liable for the acts of negligence committed by its employees CPI Brady and CPIS Perry within the course and scope of their employment with DCF.

**WHEREFORE**, Plaintiff, BRIAN CABREY, attorney ad litem and next friend of H.F., a minor child, on and behalf of H.F. requests that the Court enter judgment against Defendant, DEPARTMENT OF CHILDREN AND FAMILIES, for damages, costs, and for such other relief as the Court deems just and proper.

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues so triable as set forth herein.

Dated this 9th day of September, 2015.


ROGERS TOWERS, P.A.


By: */s/ Joshua Woolsey*
      **Joshua A. Woolsey**
      Florida Bar No.: 037905
      1301 Riverplace Boulevard, Suite 1500
      Jacksonville, Florida 32207
      (904) 398-3911 (telephone)
      (904) 396-0663 (facsimile)
      **Attorney for Plaintiffs**
      jwoolsey@rtlaw.com
      cgaver@rtlaw.com
      sklare@rtlaw.com